## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PREMIUM NUTRITIONAL PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | |
| | ) | No. 07-CV-2098-KHV |
| | ) | |
| DAN DUCOTE and JOANNE DUCOTE d/b/a DUCOTE'S PARROTPLACE, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

### MEMORANDUM AND ORDER

On January 28, 2008, this Court ordered defendants to show cause in writing on or before February 11, 2008 why the Court should not hold them in contempt of the Consent Judgment And Permanent Injunction ("Permanent Injunction") (Doc. #7) filed July 31, 2007. Defendants have not responded to the order to show cause. Because plaintiff has presented evidence which suggests that defendants have violated the permanent injunction, the Court sets the matter for a hearing to determine whether to hold defendants in contempt of the permanent injunction.

### Standard For Civil Contempt

The Court has broad discretion to use its contempt powers to ensure adherence to its orders. See Rodriquez v. IBP, Inc., 243 F.3d 1221, 1231 (10th Cir. 2001). Civil contempt may be used to compensate for injuries from noncompliance with a court order. Reliance Ins. Co. v. Mast Constr. Co., 159 F.3d 1311, 1318 (10th Cir. 1998). Wilfulness is not an element of civil contempt. See Univeral Motor Oils Co. v. Amoco Oil Co., 743 F .Supp. 1484, 1487 (D. Kan. 1990) (good faith not defense to civil contempt, although it may affect extent of penalty); see also McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949) (because purpose of civil contempt is remedial, failure to comply need not be

intentional).  Substantial compliance with a court's order is a defense to civil contempt.  <u>Universal</u> <u>Motor Oils Co.</u>, 743 F. Supp. 1487 (if violating party has taken "all reasonable steps" to comply with order, technical or inadvertent violations will not support finding of civil contempt).

As the moving party, plaintiff has the initial burden of proving by clear and convincing evidence that (1) a valid court order existed, (2) defendants had knowledge of the order and (3) defendants disobeyed the order.  <u>See</u> <u>United States v. Ford</u>, 514 F.3d 1047, 1051 (10th Cir. 2008) (citing <u>Reliance</u>, 159 F.3d at 1315).  If plaintiff makes such a showing, the burden shifts to defendants to show either that defendants complied with the order or that they could not do so.  <u>See</u> <u>Ford</u>, 514 F.3d at 1051.

### Factual Background

Premium Nutritional Products, Inc. ("Premium") owns the U.S. Certificate of Trademark Registration Nos. 2,261,863 for the mark ZUPREEM for "foods for exotic animals, namely birds and zoo animals, excluding domestic livestock, dogs and cats," and 2,897,578 for "pet toys, animal feed, bedding consisting primarily of wood chips, and litter for birds and small animals."  <u>See</u> Doc. #7 at 1-2. Premium also owns U.S. Certificate of Trademark Registration No. 2,292,187 for the mark AVIAN ENTREES for "food for caged birds."  <u>See</u> <u>id.</u> at 2.  The ZUPREEM and AVIAN ENTREES trademarks (collectively, "Premium's Marks,") are alive and in good standing, and Premium enjoys the exclusive right to use Premium's Marks in commerce in the United States.

Beginning sometime after June 4, 2001, defendants began to offer for sale on the internet and elsewhere a food for caged birds under the mark ENTREE.  Defendants have also promoted their CAJUN CUBES branded food for caged birds as having ZUPREEM ingredients, which is contrary to fact.

On March 1, 2007, Premium brought suit against Dan Ducote and Joanne Ducote, d/b/a Ducotes

ParrotPlace, alleging trademark infringement, unfair competition, false advertising and false designation of origin under the Lanham Act, 15 U.S.C. §1051 et. seq. and claims under Kansas common law.  After Premium filed suit, it entered into a settlement agreement with defendants.  On July 31, 2007, the Court entered a permanent injunction which enjoined the Ducotes from marking or using the marks Zupreem, Entree, or confusingly similar imitations in connection with the marketing or sale of pet food.  See Doc. #7.  Specifically, the Court ordered the Ducotes to refrain from:

> a. Using ZUPREEM or AVIAN ENTREES, or any mark confusingly similar thereto, alone or in combination with any other letters, words or marks, as a trademark, service mark or trade or corporate name on or in connection with the advertising, offering for sale, or actual sale of food for animals;
>
> b. The continuing use of the trademarks ZUPREEM and ENTREE in connection with the advertising, promotion or sale of food for animals, or any other name confusingly similar thereto and incorporating any of Plaintiff's Marks therein including any use of any confusingly similar mark in any trade name, domain name, website, advertising, promotional materials, course materials, including but not limited to any use of the foregoing in connection with the sponsoring of websites, use of banner ads in internet advertising, in e-mail advertising or promotion, metatags used on or in connection with any domain name of Defendants, or those websites actively or passively controlled by Defendants now or in the future;
>
> c. Passing off, inducing others or enabling others to sell or pass off any goods or services of defendants as that of plaintiff;
>
> d. Committing any other acts calculated to cause purchasers to believe that Defendants' food for caged birds are those of Plaintiff or are in any manner sponsored, endorsed, licensed or approved by Plaintiff; and
>
> e. Using, maintaining or registering any domain name which includes the marks ZUPREEM, AVIAN ENTREES or ENTREE in connection with the advertising, promotion, offering for sale or sale of food for animals.

Doc. #7 at 3-4.

Plaintiff now asks the Court to hold defendants in contempt of the permanent injunction, based on the following facts:

After the Court entered the injunction on July 31, 2007, Premium monitored defendants' website and found that the Ducotes continued to market and sell pet food products utilizing the marks "Zupreem," "Entree," and "Etree."  On October 29, 2007, Premium sent defendants a letter warning that if defendants did not comply with the terms of the permanent injunction within one week, Premium would file a motion for sanctions.  See Brown Dec. ¶ 3, attached as Ex. B to Memorandum In Support Of Plaintiff Premium Nutritional Products, Inc.'s Motion For An Order To Show Cause Why Defendants Dan Ducote And Joanne Ducote Should Not Be Held In Contempt Of This Court's Consent Judgment And Permanent Injunction Of July 31, 2007 And Sanctioned ("Plaintiff's Memorandum") (Doc. #9). Defendants did not pick up the letter.  On November 2, 2007 Premium sent the same letter to defendants via Express Mail.  On November 6, 2007, Premium sent the letter to Mr. Ducote's e-mail address.

On October 31, 2007, Gail Shepard, an employee of Premium, ordered pet food from defendants' ParrotPlace.com website.  Within a week she received the order with an invoice for pet food called "Entree." See Shepard Dec. ¶ ¶ 2, 3 and Ex. 1, attached as Ex. A to Plaintiff's Memorandum (Doc. #9). The bird food has labels on front and back which prominently display the enjoined name, "Entree." About midway down on the left side of the label is the source identifier "A Product of Ducote's ParrotPlace."  The label on the back side of the bags identifies the product as "Entree" at least three times.

On November 13, 2007, Dan Ducote sent Premium's counsel an e-mail stating that defendants had removed "Entree" from their website.  See Brown Dec. Ex. 4, attached as Ex. B to Plaintiff's Memorandum (Doc. #9).  Defendants' website now offers for sale avian pet food displayed under the mark "Etree."  According to the website, there are four varieties of avian foods sold under the mark

-4-

"Etree."  The website product description of "Etree" now states as follows: "Etree is a nutritious blend of 24 dehydrated fruits and vegetables with Zupreem pellets."  The website also offers for sale Cajun Cubes, and the link for this product displays a page with a product description which includes "Etree." Hull Dec. Ex. 3, attached as Ex. C to Plaintiff's Memorandum (Doc. #9).

### Analysis

Plaintiff asks the Court to hold defendants in contempt of the Consent Judgment And Permanent Injunction.  Plaintiff first asserts that based on the evidence set forth above, defendants have violated the Court's injunction by continuing to use the explicitly enjoined names of "Zupreem" and "Entree." Specifically, plaintiff asserts that defendants have violated the injunction in at least three distinct ways: (1) continuing to sell bird food marked prominently on the front and back with the enjoined name "Entree;" (2) shipping bird food invoices which indicate that the product is called "Entree" and (3) stating on their website that a product named "Etree" contains "Zupreem" pellets.

Plaintiff also contends that defendants have violated the injunction by using the name "Etree" because it is "confusingly similar" to the enjoined name "Entree."  A proven trademark infringer is required to keep a safe distance away from the dividing line between violating and complying with the injunction.  The infringer "must do more than see how close [it] can come with safety to that which [it was] enjoined from doing."  Universal Motor Oils Co., 743 F. Supp. at 1487.  The district court has substantial discretion to decide how close is too close.  Id. at 1488 (previous infringer of mark has greater duty to adopt distinctive mark).  The court may require the contemnor to choose a distinctively different mark rather than to hew so close to the line that the parties must interminably return to court to haggle about every mark.  Id.; see Bear U.S.A., Inc. v. Kim, 71 F. Supp.2d 237, 247 (S.D.N.Y. 1999) (infringer may not claim to be outside scope of injunction "by changing a letter or a detail of an enjoined

mark.").

Based on plaintiff's memorandum and exhibits, the Court is satisfied that plaintiff has stated a case of non-compliance with the permanent injunction.  As noted, defendants have not responded to the Court's order to show cause why the Court should not hold them in contempt.  The Court sets the matter for hearing on May 27, 2008.  At the hearing, plaintiff will have the burden to prove by clear and convincing evidence that the injunction is valid, that defendants had knowledge of the injunction, and that defendants disobeyed the injunction.  See Ford, 514 F.3d at 1051.  If plaintiff makes that showing, the burden will shift to defendants to show either that they complied with the injunction or that they could not comply with it.  See id. (burden of production is on defendant to show that compliance is impossible).

If the Court finds defendants in contempt, it will proceed to impose sanctions, which may include an accounting, disgorgement of defendants' profits, trebling of damages, destruction of all marketing materials and packaging that bear the infringing marks, and plaintiff's attorney's fees and costs in bringing this motion, among others.[1]

---

[1]      In a civil contempt proceeding, once plaintiff has established the elements of contempt by clear and convincing evidence, it need only prove damages by a preponderance of the evidence.  Reliance Ins.,159 F.3d at 1318.  Civil contempt awards are intended to coerce compliance with a court's order or to compensate plaintiff for losses sustained.  Plaintiff, however, need not show actual losses.  An award of the profits of the contemnor is an acceptable substitute for such a showing.  Bear U.S.A., 71 F.Supp.2d at 248-49; see Jerry's Famous Deli, Inc. v. Papanicolaou, 383 F.3d 998, 1004-05 (9th Cir. 2004) (ordering disgorging of defendant's profits as traditional trademark remedy).  Further, under 15 U.S.C. § 1117(a), the Court may award treble damages according to the circumstances of the case.  The Court may also award costs and attorney's fees, regardless whether the infringer acted willfully.  John Zink Co. v. Zink, 241 F.3d 1256, 1261-62 (10th Cir. 2001).

**IT IS THEREFORE ORDERED that the Court will conduct a contempt hearing on May 27th, 2008 at 1:30 p.m. in Courtroom 476, 500 State Avenue, Kansas City, Kansas.**

Dated this 9th day of May, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge