**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **PREMIUM NUTRITIONAL** | ) | |
| **PRODUCTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action** |
| **v.** | ) | |
| | ) | **No. 07-CV-2098-KHV** |
| | ) | |
| **DAN DUCOTE and JOANNE DUCOTE d/b/a** | ) | |
| **DUCOTE'S PARROTPLACE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On May 27, 2008, the Court conducted a contempt hearing to determine whether defendants Dan Ducote and Joanne Ducote d/b/a Ducote's Parrotplace were in contempt of Court for violating the Consent Judgment And Permanent Injunction ("permanent injunction"). See Doc. #7 filed July 31, 2007 (enjoining defendants from marking or using marks Zupreem, Entree or confusingly similar imitations in connection with marketing or sale of pet food). For reasons set forth below, the Court finds that defendants violated the permanent injunction and holds them in contempt. The Court further finds that plaintiff is entitled to damages in the amount of $110,460.00 and attorneys' fees in the amount of $17,930.40. Finally, the Court finds that should defendants continue to remain in contempt by use of the marks ZUPREME, ENTREE or ETREE after August 4, 2008, then commencing August 5, 2008, the Court imposes a fine of $1,000.00 per day, payable to the Court, until defendants comply with the permanent injunction.

## Standard For Civil Contempt

The Court has broad discretion to use its contempt powers to ensure adherence to its orders. See Rodriguez v. IBP, Inc., 243 F.3d 1221, 1231 (10th Cir. 2001). Civil contempt may be used to

compensate for injuries from noncompliance with a court order.  Reliance Ins. Co. v. Mast Constr. Co.,

159 F.3d 1311, 1318 (10th Cir. 1998).  Wilfulness is not an element of civil contempt.  See Universal

Motor Oils Co. v. Amoco Oil Co., 743 F.Supp. 1484, 1487 (D. Kan. 1990) (good faith not defense to

civil contempt, although it may affect extent of penalty); see also McComb v. Jacksonville Paper Co.,

336 U.S. 187, 191 (1949) (because purpose of civil contempt is remedial, failure to comply need not be

intentional).  Substantial compliance with a court's order is a defense to civil contempt.  Universal

Motor Oils Co., 743 F. Supp. at 1487 (if violating party has taken "all reasonable steps" to comply with

order, technical or inadvertent violations will not support finding of civil contempt).

As the moving party, plaintiff has the initial burden of proving by clear and convincing evidence

that (1) a valid court order existed, (2) defendants had knowledge of the order and (3) defendants

disobeyed the order.  See United States v. Ford, 514 F.3d 1047, 1051 (10th Cir. 2008) (citing Reliance,

159 F.3d at 1315).  If plaintiff makes such a showing, the burden shifts to defendants to show either that

they complied with the order or that they could not do so.  See Ford, 514 F.3d at 1051.

### Factual Background

Premium Nutritional Products, Inc. ("Premium") owns the mark ZUPREEM under U.S.

Certificate of Trademark Registration Nos. 2,261,863 for "foods for exotic animals, namely birds and

zoo animals, excluding domestic livestock, dogs and cats," and 2,897,578 for "pet toys, animal feed,

bedding consisting primarily of wood chips, and litter for birds and small animals."  Premium also owns

the U.S. Certificate of Trademark Registration No. 2,929,187 for the mark AVIAN ENTREES for "food

for caged birds."   The ZUPREEM and AVIAN ENTREES trademarks (collectively, "Premium's

Marks,") are alive and in good standing, and Premium enjoys the exclusive right to use Premium's

Marks in commerce in the United States.  Beginning some time after June 4, 2001, defendants Dan

Ducote and Joanne Ducote, dba Ducotes ParrotPlace, began to offer for sale on the internet and elsewhere a food for caged birds under the mark ENTREE.  Defendants have also promoted their CAJUN CUBES branded food for caged birds as having ZUPREEM ingredients.

On March 1, 2007, Premium filed a complaint against defendants alleging trademark infringement, unfair competition, false advertising and false designation of origin under the Lanham Act, 15 U.S.C. §1051 et seq. and the common law of the State of Kansas.  After Premium filed suit, it entered into a settlement agreement with defendants.  On July 31, 2007, the Court entered a permanent injunction which enjoined the Ducotes from marking or using the marks Zupreem, Entree or confusingly similar imitations in connection with the marketing or sale of pet food.  See Doc. #7.  Specifically, the Court ordered the Ducotes to refrain from:

> a. Using ZUPREEM or AVIAN ENTREES, or any mark confusingly similar thereto, alone or in combination with any other letters, words or marks, as a trademark, service mark or trade or corporate name on or in connection with the advertising, offering for sale, or actual sale of food for animals;
>
> b. The continuing use of the trademarks ZUPREEM and ENTREE in connection with the advertising, promotion or sale of food for animals, or any other name confusingly similar thereto and incorporating any of Plaintiff's Marks therein including any use of any confusingly similar mark in any trade name, domain name, website, advertising, promotional materials, course materials, including but not limited to any use of the foregoing in connection with the sponsoring of websites, use of banner ads in internet advertising, in e-mail advertising or promotion, metatags used on or in connection with any domain name of Defendants, or those websites actively or passively controlled by Defendants now or in the future;
>
> c. Passing off, inducing others or enabling others to sell or pass off any goods or services of defendants as that of plaintiff;
>
> d. Committing any other acts calculated to cause purchasers to believe that Defendants' food for caged birds are those of Plaintiff or are in any manner sponsored, endorsed, licensed or approved by Plaintiff; and
>
> e. Using, maintaining or registering any domain name which includes the marks ZUPREEM, AVIAN ENTREES or ENTREE in connection with the advertising,

promotion, offering for sale or sale of food for animals.

Doc. #7 at 3-4.

On December 6, 2007, plaintiff filed a motion to show cause why the Court should not hold defendants in contempt of the permanent injunction.  See Doc. #8.  On January 28, 2008, the Court ordered defendants to show cause in writing on or before February 11, 2008, why the Court should not hold them in contempt of the permanent injunction.  The Court further stated that if defendants did not respond, the Court would impose sanctions, "which may include an accounting, disgorgement of the Ducotes' profits, trebling of those damages, destruction of all marketing materials and packaging that bear the infringing marks, and Premium's attorney's fees and costs in bringing the motion, among others."  Defendants did not respond, and the Court set the matter for hearing.  On May 27, 2008, the Court held a contempt hearing.  Defendants did not appear.

## **Factual Findings**

At the hearing on May 27, 2008, plaintiff presented testimony of Gail Shepard, its director of marketing, and Susan Goulden, a legal assistant employed by plaintiff's attorneys.  Based on their testimony, the Court makes the following findings of fact.

After the Court entered the injunction on July 31, 2007, Premium monitored defendants' website and found that the Ducotes continued to market and sell pet food products utilizing the marks "Zupreem," "Entree" and" "Etree."  On October 29, 2007, Premium sent defendants a letter warning that if defendants did not comply with the terms of the permanent injunction within one week, Premium would file a motion for sanctions.  Defendants did not pick up the letter.  On November 2, 2007 Premium sent the same letter to defendants via Express Mail.  On November 6, 2007, Premium sent the letter to Mr. Ducote's e-mail address.

On October 31, 2007, Shepard ordered pet food from defendants' website, ParrotPlace.com. Defendants sent Shepard pet food with an invoice for "Entree," dated October 31, 2007. The bird food package labels display the enjoined name, "Entree, A Product of Ducote's ParrotPlace."

Sometime in November of 2007, defendants' website began to advertise "ETREE," rather than "ENTREE." The website, however, continues to state that the product includes ZUPREEM pellets.

In mid-May of 2008, Shepard called defendants' business number and ordered ENTREE; defendants filled the order with a product labeled "ETREE." As of May 27, 2008, defendants' website continued to use ETREE, ZUPREEM and ENTREE in promoting defendants' bird feed products. The use of name ETREE is confusing, in that consumers will not appreciate the small variation from ENTREE.

The suggested retail price for 2 pound bags of AVIAN ENTREES is $14.98. The standard retail markup in the industry is three times the distributor's cost. The profit margin for plaintiff's bird feed from the manufacturer to the distributor is between 55 per cent and 65 per cent (that is, the manufacturer realizes profit of 55 to 65 cents for each dollar of bird feed sold).

In 2005, defendants unsuccessfully attempted to cancel plaintiff's AVIAN ENTREES trademark registration before the Trademark Trial and Appeal Board. The Petition for Cancellation, signed by Mr. Ducote on March 30, 2005, stated that the ENTREE line accounts for approximately $350,000 of defendants' total annual sales.

As of May 27, 2008, plaintiff had incurred attorneys' fees totaling $11,420.57 in prosecuting this contempt proceeding. After the hearing, plaintiff submitted additional invoices in the amount of $6,509.83 for attorneys' fees and expenses for the month of June, 2008 in connection with the present contempt proceeding.

**Analysis**

As noted, in seeking a civil contempt order, plaintiff has the initial burden of proving by clear and convincing evidence that (1) a valid court order existed, (2) defendants had knowledge of the order and (3) defendants disobeyed the order.  See Ford, 514 F.3d at 1051.  If plaintiff makes such a showing, the burden shifts to defendants to show either that defendants complied with the order or that they could not do so.  See id.

Plaintiff has satisfied its burden in the present matter.

With respect to the validity of the court order, the Court has subject matter jurisdiction of the original matter pursuant to 28 U.S.C. § 1338(a), (b).  Defendants waived any defense to lack of personal jurisdiction by participating in the suit and executing the permanent injunction.  The Court has authority to enter injunctions in trademark matters and to compel compliance with those orders pursuant to 15 U.S.C. § 1116.  The Court is satisfied that plaintiff has met by clear and convincing evidence its burden of proof with respect to the validity of the court order.

With respect to defendants' knowledge of the order, the Ducotes signed the permanent injunction, which shows that they knew of and consented to it.  In addition, the Court has made repeated attempts to notify and elicit defendants' participation at the addresses indicated on the Court docket.  Defendants have not responded or appeared.  The Court finds that plaintiff has met its burden of proof by clear and convincing evidence that defendants had notice of the injunction.

As to the third prong, plaintiff has demonstrated that defendants have violated the permanent injunction.  Specifically, defendants have continued to sell products labeled ENTREE.  See Plaintiff's Exhibits 9, 10 and 11.  Further, use of the product name ETREE rather than ENTREE violates the permanent injunction.  See Eskay Drugs, Inc. v. Smith, 188 F.2d 430, 432 (5th Cir. 1951) (consent

-6-

judgment enjoined defendant from use of mark ESKAY or colorable imitation; court held defendant in contempt for use of mark ENKAY; defendants must do more than see how close they can come to that which they were enjoined from doing).  Finally, defendants' continued use of ENTREE and ZUPREEM on their website clearly violates the permanent injunction which prohibits the use of ENTREE and ZUPREEM or any name confusingly similar in connection with the advertising, promotion or sale of food for animals.

Plaintiff has established each of the three elements for demonstrating contempt of this Court's order of July 31, 2007 by clear and convincing evidence.  Because defendants have offered no explanation for their failure to comply with the Court's order enjoining the use of ENTREE or any confusingly similar mark in their packaging and advertising, and use of ZUPREEM in their advertising, promotion or sale of food for animals, the Court finds by clear and convincing evidence that the defendants are in contempt of court.

Plaintiff seeks attorneys' fees and expenses incurred in bringing and prosecuting the contempt motion.  A complainant may recover attorneys' fees and expenses incurred in prosecuting a contempt.  See Select Creations v. Paliafito, Am., 906 F. Supp. 1251, 1278 (E.D. Wis. 1995) (citing Connolly v. J.T. Ventures, 851 F.2d 930, 935 (7th Cir. 1988) (independent of compensatory damages award, proper to award expenses and fees in civil contempt proceedings)).  The trial court has discretion whether to award attorneys' fees and expenses.  See Allied Materials Corp v. Superior Prods. Co., 620 F.2d 224, 227 (10th Cir. 1980) (court may award compensatory attorneys' fees in civil contempt proceeding); see also Donovan v. Burlington N., Inc., 781 F.2d 680, 683 (9th Cir. 1986); Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1534 (11th Cir. 1986).  The Court finds that in seeking a contempt order, plaintiff has reasonably incurred attorneys' fees and costs in the amount of

$17,930.40.  <u>See</u> Exs. 12, 13.  The Court therefore awards plaintiff attorneys' fees of $17,930.40.

In addition, plaintiff may recover defendants' profits made as a result of the contemptuous conduct.  The Court awards such profits to deter future infringements or to avoid unjust enrichment of defendants.  <u>See</u> <u>Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.</u>, 885 F.2d 1, 6 (2d Cir. 1989); <u>Howard Johnson Co. v. Khimani</u>, 892 F.2d 1512, 1520-21 (11th Cir. 1990).  A trademark owner need not prove willfulness or actual damages to recover the profits of contemnor.  <u>See</u> <u>Abbot Labs. v. Unlimited Beverages, Inc.</u>, 218 F.3d 1238, 1242 (11th Cir. 2000).  Further, under the Lanham Act, 15 U.S.C. § 1117, in computing defendants' profits, defendants have the burden to prove deductions from gross sales.  "In assessing profits, the plaintiff shall be required to prove defendant[s'] sales only; defendant must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a).

Plaintiff has established that defendants' sales of ENTREE products total $350,000 annually. <u>See</u> Ex. 14.  Defendants have not appeared and thus have not established any deduction from their annual sales.  The testimony of Gail Shepard establishes that in the bird feed industry, profits of the manufacturer typically represent about 55 to 65 per cent of sales.

Under the circumstances, the Court believes that plaintiff should be compensated by an award of defendants' profits calculated using revenue of $958 per day ($350,000 divided by 365) times the lower range of the margin percentage to which Ms. Shepard testified (55 per cent) which equals $526 per day.  The Court awards plaintiff the daily amount commencing October 31, 2007 (the date of the invoice for the packaging which continues to bear the ENTREE name in violation of the Consent Judgment) and continuing to May 27, 2008.[1]  (210 days).  Thus, the Court awards plaintiff $110,460.00

---

[1]     At the hearing on May 27, 2008, plaintiff presented testimony that on that date, defendants' website continued to use ENTREE/ETREE and ZUPREEM.

as the measure of defendants' profits from continued contemptuous use of plaintiff's trademarks ETREE, ENTREE and ZUPREEM.

Finally, because defendants have failed to respond to plaintiff's motion for contempt or the Court's order to show cause, or to attend the hearing in this matter, the Court finds that a coercive fine is required to compel compliance with the permanent injunction.  See Ager v. Jane C. Stormont Hosp., 622 F.2d 496, 500 (10th Cir. 1980) (civil contempt characterized by court's desire to compel obedience of court order or compensate litigant for injuries sustained from disobedience).  Because the infringing conduct continues unabated, the Court finds that it is appropriate to impose a coercive fine for each day that the contempt continues.  In view of the annual revenues of defendants under the ENTREE/ETREE mark and the prior conduct of defendants, should defendants or any persons acting under their control or direction continue use of ENTREE/ETREE and ZUPREEM marks, or any similar marks, in any manner proscribed by the Consent Judgment after August 4, 2008, then commencing August 5, 2008, the Court shall impose a coercive fine in the amount of $1,000.00 per day until defendants demonstrate complete compliance.

**IT IS THEREFORE ORDERED** that the Court finds defendants in contempt of court for their failure to comply with the **Consent Judgment And Permanent Injunction** **(Doc. #7) dated July 31, 2007.  The Clerk is directed to enter judgment in favor of plaintiff in the amount of $128,390.40.**

**IT IS FURTHER ORDERED** that should defendants or any persons acting under their control or direction continue use of ENTREE/ETREE and ZUPREEM marks, or any similar marks, in any manner prohibited by the **Consent Judgment (Doc. #7)** after August 4, 2008, then commencing August 5, 2008, Court shall impose a coercive fine in the amount of $1,000.00 per day

**until defendants demonstrate complete compliance with the consent judgment.**

Dated this 21st day of July, 2008 at Kansas City, Kansas.

s/Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge